# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**MICHAEL MOREL, ET AL.**                    CIVIL ACTION

**VERSUS**                                   NO. 20-1348-WBV-JVM

**U.S. XPRESS, INC., ET AL.**                SECTION: D (1)

## ORDER AND REASONS

Before the Court is Co-Defendant U.S. Xpress, Inc.'s Motion to Compel Arbitration and Dismiss All Claims.[1]  The Motion is opposed,[2] and U.S. Xpress, Inc. has filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part** and **DENIED in part.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case involves claims of employment discrimination brought by Michael and Teresa Morel (collectively, "Plaintiffs"), arising out of Mr. Morel's employment with U.S. Xpress, Inc. ("Xpress").  Plaintiffs allege that Mr. Morel began working at Xpress on or around July 28, 2018 as a Transportation Supervisor II, earning $50,000 a year.[4]  Plaintiffs assert that during his initial interview, Mr. Morel notified Clayton Zieglor, Depot Manager at Xpress, of his limitations due to past knee replacements. Plaintiffs allege that Mr. Morel suffers from a non-paralytic orthopedic disability which, among other things, prevents Mr. Morel from traversing stairs more than two

---

[1] R. Doc. 15.
[2] R. Doc. 23.
[3] R. Doc. 29.
[4] R. Doc. 1 at ¶ 17.

or three times a day without substantial pain and causing further damage to his knees.[5]  Plaintiffs assert that Mr. Ziegler never informed Mr. Morel that the position for which he was applying required climbing flights of stairs multiple times a day.[6]

Plaintiffs allege that after weeks of traversing the office stairs approximately 25 to 30 times per day, he requested an accommodation from Xpress regarding his disability, including a downstairs office.[7]  Plaintiffs assert that Xpress had the resources and opportunity to accommodate Mr. Morel's disability, but refused to do so.[8]  Plaintiffs allege that on September 28, 2018, while walking up the stairs after using the restroom, Mr. Morel's left knee buckled and gave way.[9]  Mr. Morel contacted the human resources department and was instructed to go to the emergency room.[10]  Mr. Morel drove himself to the emergency room and began physical therapy soon thereafter.[11]  Plaintiffs allege that this injury, and the refusal to accommodate Mr. Morel's disability, has led to multiple surgeries on Mr. Morel's knee and leg, and has left him reliant upon a cane to walk for the rest of his life.[12]

On May 5, 2020, Plaintiffs filed a Complaint in this Court against Xpress and Walmart Inc. ("Wal-Mart") (collectively, "Defendants"),[13] asserting that Xpress violated Mr. Morel's rights under the Americans With Disabilities Act (the "ADA"),

---

[5] *Id.* at ¶ 19.

[6] *Id.* at ¶ 20.

[7] *Id.* at ¶¶ 22-28.

[8] *Id.* at ¶¶ 32-33.

[9] *Id.* at ¶¶ 36-37.

[10] *Id.* at ¶¶ 39-40.

[11] *Id.* at ¶¶ 40-44.

[12] *Id.* at pp. 5-12.

[13] Plaintiffs allege that Xpress is a carrier for Walmart and that, upon information and belief, Walmart owns the distribution center where Mr. Morel was primarily located while employed by Xpress.  *Id.* at ¶¶ 25-26 & 133

42 U.S.C. § 12101, *et seq.*, Defendants violated the Louisiana Employment Discrimination Law, La. R.S. 23:301, *et seq.*, and Wal-Mart violated The Rehabilitation Act, 29 U.S.C. § 794(a).[14]   Teresa Morel also asserts a loss of consortium claim.[15]   Plaintiffs seek injunctive relief, including an order restraining Defendants from engaging in further discriminatory conduct, compensatory and consequential damages, punitive damages, pre-judgment and post-judgment interest, and attorney's fees.[16]

Xpress filed the instant Motion to Compel Arbitration and Dismiss All Claims on August 4, 2020, seeking an order pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, and Federal Rule of Civil Procedure 12(b), compelling Mr. Morel to arbitrate all of his claims against Xpress and dismissing all of the claims asserted by Plaintiffs against Xpress.[17]   Xpress asserts that, as part of the hiring process, Mr. Morel signed a Nondisclosure and Nonsolicitation Agreement (the "Agreement") containing an arbitration clause, in which he agreed to submit legal claims related to his employment to binding arbitration.[18]   Xpress attached to its Motion the Declaration of Kelly McGraw, Director of Human Resources for Xpress.[19]   Ms. McGraw attests that as part of the hiring process, Mr. Morel electronically submitted and digitally signed the Agreement on July 12, 2018, containing the

---

[14] *Id*. at pp. 12-19.  On December 10, 2020, Plaintiffs moved to dismiss without prejudice all of their claims against Walmart. (R. Doc. 35).  The Court granted the Motion on December 11, 2020, dismissing Walmart from the suit.  (R. Doc. 36).
[15] R. Doc. 1 at ¶¶ 138-142.
[16] *Id*. at p. 20.
[17] R. Doc. 15.
[18] R. Doc. 15-3 at p. 1.
[19] R. Doc. 15-1, pp. 1-4.

following arbitration clause:

**Arbitration Program Agreement**

I acknowledge that USX has provided me a copy of the Xpress Resolution Program and Rules for Arbitration (attached hereto and hereinafter referred to as the "Program") and that I have reviewed the Program. In exchange for the legal consideration referenced in the Program, including USX's agreement to employ me, I consent to, and agree to be bound by, the terms of the Program. In particular, and without limitation, I confirm my understanding and agreement that work disputes in which I am involved that fall within the Program's definition of "Legal Dispute" will be resolved exclusively through final and binding arbitration rather than before a judge or jury in court or before an administrative adjudicative body. Within thirty (30) days after becoming subject to the Program, I may inform the Program Director in writing that I am electing to "Opt Out" of that portion of the Program that would prohibit my pursuing a Class Action in a court of law. By not exercising the "Opt Out" right, I would voluntarily agree not to pursue a Class Action in arbitration or in a court of law.[20]

Ms. McGraw states that, as part of the hiring process, Mr. Morel was also provided with the "Xpress Resolution Program and Rules for Arbitration" (the "Arbitration Program").[21] Ms. McGraw asserts that Mr. Morel specifically acknowledged in writing that Xpress provided him with a copy of the Arbitration Program and that Mr. Morel reviewed and agreed to its terms.[22] Ms. McGraw states that if Mr. Morel had not digitally signed the Agreement, or if he had not acknowledged receipt of and his agreement to the terms of the Arbitration Program, Xpress would not have allowed him to begin his employment.[23]

---

[20] *Id.* at p. 2, ¶ 7.
[21] *Id.* at p. 3, ¶ 8.
[22] *Id.*
[23] *Id.* at ¶ 9.

Xpress argues that because Mr. Morel previously agreed to arbitrate all of the claims asserted against Xpress in his Complaint, the FAA and controlling Supreme Court authority require that the Court compel him to arbitrate those claims pursuant to the FAA and to dismiss or, alternatively, stay Mr. Morel's claims against Xpress pursuant to the FAA and Federal Rule of Civil Procedure 12(b).[24]  Xpress further asserts that Mrs. Morel's loss of consortium claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b) or, alternatively, stayed pending arbitration of Mr. Morel's claims against Xpress, since the loss of consortium claim derives from Mr. Morel's employment discrimination claims.[25]

Plaintiffs oppose the Motion, asserting that Mr. Morel's claims are excluded from arbitration because they do not fall within the definition of "Legal Dispute" set forth in the Arbitration Program.[26]  The Arbitration Program provides the following definition:

> "Legal Dispute" means any dispute between a Participant and the Company that involves any legal or equitable claim, regardless of when the events on which it is based occurred, including events before or after a Participant's employment and events before a Participant became subject to this Program *(unless such Legal Dispute was already asserted in a court or before an administrative adjudicative body)*.[27]

Plaintiffs argue that the definition of "Legal Dispute" contains a "carveout" for legal disputes already asserted in a court or before an administrative adjudicative body, including the United States Equal Employment Opportunity Commission (the

---

[24] R. Doc. 15-3 at p.  2.
[25] *Id.*
[26] R. Doc. 23.
[27] *Id.* at p. 3 (*quoting* R. Doc. 15-1 at p. 7) (emphasis added by Plaintiffs).

"EEOC").[28]  Plaintiffs assert that Mr. Morel timely filed a Charge of Discrimination with the EEOC against Xpress on January 24, 2020, based upon the same allegations contained in the Complaint.[29]  Plaintiffs argue that because Mr. Morel filed a Charge of Discrimination with the EEOC before filing suit in federal court, all of his claims fall within the "carveout" set forth in the arbitration clause and, therefore, are not subject to arbitration.[30]

Plaintiffs further assert that Mr. Morel's discrimination claims are not subject to arbitration because he could not have consented to arbitrate future claims that were unknown at the time of executing the Agreement and the Arbitration Program.[31] Finally, Plaintiffs argue the arbitration clause is not enforceable under Louisiana law because there is insufficient evidence that Mr. Morel's consent was freely given.[32] Plaintiffs contend that mutual consent is lacking because Xpress was in a position of greater bargaining power and had the ability to unilaterally dictate the terms of the arbitration clause without any negotiation.[33]

In response, Xpress maintains that Mr. Morel's claims are covered by the arbitration clause because the claims asserted in the Complaint were not already in court or before an adjudicative body at the time Mr. Morel signed the Agreement containing the arbitration clause. [34]  Xpress asserts that Plaintiffs' strained interpretation of the term "Legal Dispute" makes no sense, and that any doubts

---

[28] R. Doc. 23 at p. 4.
[29] *Id*. at pp. 2 & 3-4.
[30] *Id*.
[31] *Id*. at p. 5.
[32] *Id*. at p. 6.
[33] *Id*. at pp. 6-7.
[34] R. Doc. 29 at pp. 2-3.

concerning the scope of arbitrable issues should be resolved in favor of arbitration.[35] Xpress points out that Plaintiffs cite no legal authority for their assertion that Mr. Morel could not consent to arbitrate future claims, and further assert that the arbitration clause indisputably is an agreement to arbitrate future claims.[36]  Finally, Xpress asserts there is nothing unconscionable about the arbitration clause, noting that Mr. Morel was given the opportunity to opt-out of certain aspects of the Arbitration Program and he chose not to.[37]   Xpress argues that Plaintiffs' unsupported assertions regarding unequal bargaining power have repeatedly been rejected as grounds for not enforcing arbitration agreements.[38]

## II.    LEGAL STANDARD

### A. Motion to Compel Arbitration

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), governs the enforceability of arbitration agreements in federal court.  The FAA provides that an arbitration agreement in writing "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[39] Additionally, a party to an arbitration agreement "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[40]  "The underlying purpose of the FAA was to create a policy in favor of arbitration, such that 'any doubts concerning the scope of

---

[35] *Id*. at pp. 3-4 (citations omitted).
[36] R. Doc. 29 at pp. 4-5.
[37] *Id*. at p. 5 (*citing* R. Doc. 15-1 at p. 3, ¶ 12)
[38] R. Doc. 29 at pp. 5-6 (citations omitted).
[39] 9 U.S.C. § 2.
[40] 9 U.S.C. § 4.

arbitrable issues should be resolved in favor of arbitration.'"[41]  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[42]

Under § 3 of the FAA, if a federal court finds the dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." [43]  The Fifth Circuit has construed this provision as providing for a mandatory stay of litigation.[44]  This Court recently recognized, however, that the Fifth Circuit has not provided clear guidance regarding whether claims should be dismissed or stayed pending arbitration.[45]  In *Alford v. Dean Witter Reynolds, Inc.*, the Fifth Circuit held that, "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."[46]  However, the Fifth Circuit subsequently clarified the language in the

---

[41] *Iheanacho v. Air Liquide Large Industries U.S. L.P.*, Civ. A. No. 19-532-SDD-SDJ, 2020 WL 3451689, at *2 (M.D. La. June 24, 2020) (quoting  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 360 (5th Cir. 2013)).

[42] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241, 84 L. Ed. 2d 158 (1985) (citation omitted).

[43] 9 U.S.C. § 3.

[44] *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342 (5th Cir. 2004) (*quoting* 9 U.S.C. § 3).

[45] *Hanberry v. First Premier Bank*, Civ. A. No. 2:19-CV-00898, 2019 WL 4415267, at *7 (E.D. La. Sept. 16, 2019).

[46] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (citing *Sea-Land Service, Inc. v. Seal-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D. Puerto Rico 1986); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (expressly holding that 9 U.S.C. § 3 does not preclude dismissal); *Hoffman v. Fidelity and Deposit Co. of Maryland*, 734 F. Supp. 192, 195 (D.N.J. 1990); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991)) (emphasis in original)..

*Alford* opinion, noting that, "*Alford* held merely that dismissal was not an abuse of discretion," but that it "did not hold that dismissal was required . . . much less that failure to dismiss would have been an abuse of discretion."[47] Thus, district courts have discretion to stay or dismiss a case when all of the claims asserted are subject to arbitration.[48]

In determining whether a party should be compelled to arbitrate, the Court's inquiry consists of three steps.[49] First, the Court must determine whether a valid agreement to arbitrate exists between the parties.[50] The Court must then determine whether the dispute in question falls within the scope of the arbitration clause.[51] If the first two steps are answered affirmatively, the Court must determine "whether any federal statute or policy renders the claims nonarbitrable."[52]

## III.   ANALYSIS

### A. There was a valid agreement to arbitrate between the parties.

#### 1.   *Mr. Morel consented to the arbitration clause.*

In determining whether the parties in this case entered a valid arbitration contract, the Court must apply state contract law.[53] Here, the parties agree that

---

[47] *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.9 (5th Cir. 2003) (citing *Alford*, 975 F.2d at 1164).

[48] *Alford*, 975 F.2d at 1164; *See Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 676 (5th Cir. 1999) (interpreting *Alford* to mean "district courts have discretion to dismiss cases in favor of arbitration").

[49] *Hill v. Hornbeck Offshore Services, Inc.*, 799 F. Supp. 2d 658, 661 (E.D. La. 2011) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353-54, 87 L.Ed.2d 444 (1985); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

[50] *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007) (quoting *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)) (internal quotation marks omitted); *Hill*, 799 F. Supp. 2d at 661 (citing *Gaskamp*, 280 F.3d at 1073).

[51] *Conegie ex rel. Lee*, 492 F.3d at 597 (quoting *Will–Drill Res., Inc.*, 352 F.3d at 214).

[52] *Hill*, 799 F.3d at 661 (quoting *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009)) (internal quotation marks omitted); *Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004).

[53] *Kubala v. Supreme Prod. Serv.s, Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (citation omitted).

Louisiana contract law governs.[54]   This Court has previously recognized that Louisiana law's favorable treatment of arbitration agreements echoes the FAA.[55] Louisiana law provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[56] Louisiana law also gives legal effect to both electronic contracts and signatures.[57]  Thus, "in the absence of fraud, misrepresentation, or deceit, one is bound under Louisiana law to the terms of a contract, signed electronically or otherwise."[58]

---

[54] *See*, R. Doc. 15-3 at pp. 6-7; R. Doc. 23 at pp. 5-6.  The Court recognizes that the Agreement, which contains the arbitration clause, includes a "Choice of Law and Venue" provision, which states that the Agreement shall be governed by Tennessee law.  R. Doc. 15-1 at p. 6, ¶ 9.  However, because both parties have briefed the application of Louisiana law to the arbitration clause and neither party has made any argument concerning the application of Tennessee law, the Court is of the opinion that the parties have mutually consented to waive this choice-of-law provision.  *See*, *Al-Soud v. Youtoo Media, L.P.*, Civ. A. No. 3:15-CV-3074-C, 2017 WL 3841197, at *2 (N.D. Tex. Mar. 15, 2017).  Additionally, the Court notes that the rules of contract interpretation in Tennessee mirror those of Louisiana.  *See*, *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666 (Tenn. Ct. App. 2007) ("A contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.") (quoting *Staubach Retail Servs. Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005)); *Cooper v. Terminix Int'l Co.*, 2018 WL 1998973, at *3 (S.D. Tex. App. 11, 2018) ("Under Tennessee law, 'mutual promises to be bound under an arbitration agreement can constitute adequate consideration.'") (quoting *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 929 (M.D. Tenn. 2003)).  The Court is also cognizant of the forum selection clause in the Agreement, which provides that, "Employee and [Xpress] hereby submit unconditionally to jurisdiction of, and agree that venue shall lie exclusively in, the federal and state courts located in the [sic] Hamilton County, Tennessee for purposes of the resolution of any disputes arising under this Agreement."  R. Doc. 15-1 at p. 6, ¶ 19.  Although not addressed by the parties and not raised by Xpress, the Court notes that another Section of this Court has previously held that, "[A] party cannot avail itself of its right under such a clause after it has manifested its intention to waive, and has acted to waive, its right by pursuing substantive relief in a forum other than the one selected in the clause."  *Global Oil Tools, Inc. v. Expeditors Int'l of Washington, Inc.*, 429 F. Supp. 3d 221, 230 (E.D. La. 2019) (Ashe, J.). The Court finds that by filing the instant Motion, Xpress has manifested its intention to waive, and has acted to waive, its right by pursuing substantive relief in this Court.

[55] *Hill v. Hornbeck Offshore Servs, Inc.*, 799 F. Supp. 2d 658, 661 (E.D. La. 2011) (quoting *Aguillard v. Auction Mgmt. Corp.*, 2004-2804 (La. 6/29/05); 908 So.2d 1) (internal quotation marks omitted).  *See also*, La. R.S. 9:4201 & 9:4202.

[56] La. R.S. 9:4201.

[57] *Hill*, 799 F. Supp. 2d at 661 (*citing* La. R.S. 9:2607).

[58] *Hill*, 799 F. Supp. 2d at 661 (citing *In re Cajun Elec. Power Co-op, Inc.*, 791 F.2d 353, 359 (5th Cir. 1986)).

Under Louisiana law, the formation of a valid contract requires: (1) capacity to contract; (2) mutual consent; (3) a certain object; and (4) a lawful purpose.[59] "A contract is formed by the consent of the parties established through offer and acceptance."[60] "Consent may be vitiated by error, fraud, or duress."[61] "When a contract is unambiguous and internally consistent on its face, interpretation of the contract remains within the 'four corners' of the written documents."[62] Additionally, the Fifth Circuit has held that, "To be *enforceable*, a contract requires mutual assent, and '[e]vidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind.'"[63]

Here, Plaintiffs argue that the arbitration clause is not valid and enforceable due to a lack of mutual consent. Plaintiffs claim that Mr. Morel could not consent to arbitrate future claims related to his disability that were not reasonably foreseeable at the time he signed the Agreement containing the arbitration clause.[64] Plaintiffs cite no legal authority to support this position.

Xpress has provided affidavits and documentation showing that Mr. Morel electronically signed the Agreement and received a copy of the Arbitration Program before his hiring.[65] Plaintiffs did not submit any evidence in support of their

---

[59] *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 430 n.4 (5th Cir. 1996) (citing *Keller v. Sisters of Charity*, 597 So.2d 1113, 1115 (La. App. 2 Cir. 1992); La. Civ. Code arts. 1918, 1927, 1966 & 1971).
[60] La. Civ. Code art. 1927.
[61] La. Civ. Code art. 1948.
[62] *Boxley v. Family Dollar Stores, Inc.*, Civ. A. No. 5:19-CV-00568, 2020 WL 2104945, at *4 (W.D. La. May 1, 2020) (quoting *In re Cajun Elec. Power Co-op, Inc.*, 791 F.2d 353, 359 (5th Cir. 1986)).
[63] *Lyda Swinerton Builders, Inc. v. Oklahoma Surety Co.*, 903 F.3d 435, 445-46 (5th Cir. 2018) (quoting *Baylor Univ. v. Sonnichsen*, 221 S.W. 3d 632, 635 (Tex. 2007)) (emphasis in original).
[64] R. Doc. 23 at p. 5.
[65] *See*, R. Doc. 15-1, pp. 1-6.

Opposition brief to dispute the evidence submitted by Xpress. Thus, the undisputed evidence before the Court shows that, as part of the hiring process, Mr. Morel electronically signed the Agreement on July 12, 2018, which provides, in pertinent part, that, "I confirm my understanding and agreement that work disputes in which I am involved that fall within the [Arbitration] Program's definition of 'Legal Dispute' will be resolved exclusively through final and binding arbitration rather than before a judge or jury in court or before an administrative adjudicative body." [66] The Arbitration Program defines the term "Legal Dispute" as "any legal or equitable claim, regardless of when the events on which it is based occurred, including events before or after a Participant's employment and events before a Participant became subject to this Program . . . ." [67] The undisputed evidence shows that Mr. Morel specifically acknowledged in writing that Xpress provided him with a copy of the Arbitration Program, that he had reviewed it, and that he agreed to it. [68]

The Court finds that the arbitration clause is a valid, enforceable contract between Mr. Morel and Xpress. The undisputed evidence shows that the arbitration clause is a written contract and neither party has pointed to any ambiguity in the clause. The undisputed evidence also shows that the Agreement, which contains the arbitration clause, was electronically signed by Mr. Morel on July 12, 2018, and that Mr. Morel subsequently worked at Xpress from July 30, 2018 until approximately

---

[66] R. Doc. 15-1 at p. 2, ¶ 7.
[67] *Id.* at p. 7, ¶ I.
[68] *Id.* at p. 3, ¶ 8.

May 24, 2019.[69]  The Court further notes that the arbitration clause contains an "Opt-Out" provision, which provides the following:

> Within thirty (30) days after becoming subject to the [Arbitration] Program, I may inform the Program Director in writing that I am electing to "Opt Out" of that portion of the Program that would prohibit my pursuing a Class Action in a court of law.  By not exercising the "Opt Out" right, I would voluntarly agree not to pursue a Class Action in arbitration or in a court of law.[70]

The Arbitration Program contains an identical "Opt-Out" provision. [71]  The undisputed evidence shows that Mr. Morel never exercised the "Opt-Out" provision.[72]  Moreover, by signing the Agreement, Mr. Morel represented that he consented to, and agreed to be bound by, the terms of the Arbitration Program, "In exchange for the legal consideration referenced in the Program, including [Xpress]'s agreement to employ me . . . ."[73]  Mr. Morel also represented that, "I acknowledge that I have had the opportunity to carefully read this Agreement and consult legal counsel of my choice.  I understand this Agreement and accept it."[74]

Based on the foregoing undisputed evidence, the Court finds that the arbitration clause is a valid, enforceable contract.

---

[69] R. Doc. 15-1 at p. 3.  The Court notes that even if Mr. Morel's electronic signature was insufficient to show express written acceptance, his continued employment with Xpress after signing the Agreement has been deemed sufficient to constitute acceptance under Louisiana law.  *Boxley v. Family Dollar Stores, Inc.*, Civ. A. No. 5:19-CV-00568, 2018 WL 2104945, at *4, n.5 (W.D. La. May 1, 2020) (citing *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532-33 (5th Cir. 2005)).
[70] R. Doc. 15-1 at p. 3, ¶ 12 & p. 6, ¶ 9
[71] *Id.* at p. 9, ¶ 10.
[72] *Id.* at p. 3, ¶ 12.
[73] *Id.* at p. 6, ¶ 10.
[74] *Id.*

### 2. *The arbitration clause is not unconscionable.*

Plaintiffs further assert that the arbitration clause is not binding because Mr. Morel's consent was not freely given due to the lack of equal bargaining power between the parties. Plaintiffs argue that the arbitration clause is unconscionable because Mr. Morel was not given the opportunity to negotiate the terms of arbitration and he was instructed that if he did not sign the Agreement, he would not be employed.[75] Plaintiffs, however, fail to cite any Fifth Circuit authority to support their arguments that the arbitration clause is unconscionable.

This Court has previously recognized that, "Where a party h[as] no power to negotiate a contract, state law permits courts to strike an unconscionable arbitration clause if it is found to be unduly burdensome or extremely harsh."[76] Additionally, "Louisiana courts have considered such factors as the clause's physical characteristics, its mutuality, and the bargaining strength of the respective parties."[77]

The Court recognizes that although prospective employees may have unequal bargaining power, Mr. Morel could have had the arbitration clause reviewed by an attorney or other knowledgeable person prior to signing it. In fact, by signing the

---

[75] R. Doc. 23 at pp. 5-7.
[76] *Hill v. Hornbeck Offshore Servs., Inc.*, 799 F. Supp. 2d 658, 662 (E.D. La. 2011) (quoting *Costanza v. Allstate Insurance Co.*, Civ. A. No. 02-1492, 2002 WL 31528447, at *5 (E.D. La. Nov. 12, 2002)). The Court notes that, "Under Tennessee law, a contract is unconscionable when the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" *Lagrone Const., LLC v. Landmark, LLC*, 40 F. Supp. 3d 769, 778-79 (N.D. Miss. 2014) (quoting *Huan v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)).
[77] *Hill*, 799 F. Supp. 2d at 662 (citing *Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, 2007-146 (La. App. 3 Cir. 12/12/07); 971 So.2d 1257, 1266.

Agreement, which contains the arbitration clause, Mr. Morel explicitly represented that, "I acknowledge that I have had the opportunity to carefully read this Agreement and consult legal counsel of my choice.  I understand this Agreement and accept it."[78] Additionally, Plaintiffs did not submit any evidence indicating that other similar jobs were not available to Mr. Morel and that he was required to take the job even though he did not approve of the arbitration clause.[79]  In fact, there is no evidence that Mr. Morel even objected to the arbitration clause and/or that he signed the Agreement containing the arbitration clause under protest.[80]  Further, Mr. Morel could have exercised the "Opt-Out" provision contained in the arbitration clause within 30 days of signing the Agreement.[81]  The undisputed evidence before the Court shows that Mr. Morel never exercised the "Opt-Out" provision or otherwise voiced any objection to the terms of the arbitration clause.[82]  Additionally, there is no evidence before the Court indicating that Mr. Morel's consent was not freely given.

Based on the foregoing facts and evidence, the Court cannot say that it would be unconscionable to enforce the terms of the arbitration clause.[83]

## B. The claims against Xpress fall within the scope of the arbitration clause.

---

[78] R. Doc. 15-1 at p. 6, ¶ 10.
[79] *See, Rogers v. Brown*, 986 F. Supp. 354, 359 (M.D. La. 1997) (finding the difference in bargaining positions was lacking where plaintiff failed to submit any evidence that other similar jobs were not available and that plaintiff was required to take the job even though she did not approve of the arbitration provision).
[80] R. Doc. 15-1 at p. 6, ¶ 10.
[81] *Id*. at ¶ 9.
[82] *Id*. at p. 3, ¶ 12.
[83] *See, Banks v. Waitr-Holdings, Inc.*, 2:19-CV-008998, 2019 WL 6883672, at *4 (W.D. La. Dec. 17, 2019).

The Court must next determine whether the claims asserted against Xpress fall within the scope of the arbitration clause.  By signing the Agreement, Mr. Morel agreed that, "work disputes in which I am involved that fall within the [Arbitration] Program's definition of 'Legal Dispute' will be resolved exclusively through final and binding arbitration rather than before a judge or jury in court or before an administrative adjudicative body."[84]  The Arbitration Program defines the term "Legal Dispute," in pertinent part, as, "any dispute between a Participant and the Company that involves any legal or equitable claim, regardless of when the events on which it is based occurred . . . (unless such Legal Dispute was already asserted in a court or before an administrative adjudicative body)."[85]  The Arbitration Program further provides that, "A Legal Dispute does <u>not </u>include . . . (iii) a Participant's claim filed in a court or an administrative adjudicative body before the Participant signed the Agreement . . . ."[86]

Plaintiffs insist that their claims are not subject to arbitration because they fall within the "carveout" set forth in the definition of "Legal Dispute" for disputes already asserted in a court or before an administrative adjudicative body.[87]  Plaintiffs argue this "carveout" applies to Mr. Morel's claims because they are identical to the claims asserted in his Charge of Discrimination filed with the EEOC, which is an

---

[84] R. Doc. 15-1 at p. 6, ¶ 8.
[85] R. Doc. 15-1 at p. 7, ¶ I.
[86] *Id.*
[87] R. Doc. 23 at pp. 3-4.

administrative adjudicative body.[88]  Plaintiffs, however, cite no legal authority for their position and the Court has found none.

The Court finds that, even if the EEOC is considered an administrative adjudicative body, the "carveout" provision relied upon by Plaintiffs would not apply to Mr. Morel's discrimination claims because the provision applies only to claims that were filed "in a court or an administrative body *before* the Participant signed an Agreement."[89]  A plain reading of the provision (". . .a Participant's claim filed in a court or an administrative adjudicative body before the Participant signed the Agreement") clearly reflects that any such carve out claim must have been filed *before* the Participant signed the Agreement. Plaintiff signed the Arbitration Agreement on July 12, 2018.  The undisputed evidence shows that Mr. Morel did not file his Charge of Discrimination with the EEOC until January 24, 2020,[90] long after he had agreed to the Arbitration Program.[91]   Thus, Mr. Morel did not file his Charge of Discrimination with the EEOC until after he became subject to the Arbitration Program.  As such, Mr. Morel's claims do not fall within the alleged "carveout" set forth in the definition of "Legal Dispute" set forth in the Arbitration Program.  The Court finds that Mr. Morel's claims against Xpress fall squarely within the scope of the arbitration clause and subject to arbitration.[92]

---

[88] *Id*. at p. 4.

[89] R. Doc. 15-1 at p. 7, ¶ 2(I).  The Arbitration Program defines the term "Agreement" to mean "a written or electronic agreement by which a Participant agrees to the Program," and defines "Program" as "the terms of this document (as amended from time to time)."  *Id*. at pp. 7-8, ¶¶ 2(A) & (O).

[90] R. Doc. 23 at p. 2.

[91] R. Doc. 15-1 at pp. 2-3 & 5-11.

[92] Because the Court finds that Plaintiffs' claim does not fall within the carve out provision, the Court need not determine whether the EEOC is an "administrative adjudicative body," as set forth in the Agreement.  However, the Court notes that the Supreme Court has held that the EEOC does not have

### C. No federal statute or policy renders Plaintiffs' claims nonarbitrable

Finding that the arbitration clause is valid and that Mr. Morel's claims fall within the scope of the arbitration clause, the Court must determine whether the claims are rendered nonarbitrable by federal statute or policy. Neither party has identified any federal statute or policy that renders Mr. Morel's claims nonarbitrable, and the Court knows of none. Accordingly, this matter must be referred to arbitration.

### D. Mrs. Morel's loss of consortium claim against Xpress must be dismissed under Fed. R. Civ. P. 12(b)(6).

Xpress further asserts that Mrs. Morel's loss of consortium claim against it should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim because Plaintiffs have asserted only conclusory allegations.[93] Xpress asserts that the loss of consortium claim also fails as a matter of law because such claims are not cognizable in employment discrimination cases.[94] Plaintiffs did not address these arguments in their Opposition brief.[95]

Mrs. Morel's loss of consortium claim is set forth in one sentence in the Complaint, wherein Plaintiffs allege that, "as a result of Defendants' refusal to accommodate Mr. Morel's disability and his subsequent wrongful termination, Plaintiffs' marriage has been adversely affected, resulting in loss of services, loss of

---

"direct powers of enforcement" and "cannot adjudicate claims or impose administrative sanctions." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S. Ct. 1011, 1018, 39 L.Ed.2d 147 (1974). Instead, "final responsibility for enforcement of Title VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*] is vested with federal courts." *Id.*

[93] R. Doc. 15-3 at pp. 9-10

[94] R. Doc. 15-3 at p. 10 (quoting *Barker v. Halliburton Co.*, 645 F.3d 297, 299-300 (5th Cir. 2011)) (internal quotation marks omitted).

[95] *See, generally*, R. Doc. 23.

support, and loss of quality in the relationship."[96]   Thus, Mrs. Morel's loss of consortium claim clearly derives from Mr. Morel's employment discrimination claims against Defendants.   Specifically, the loss of consortium claim derives from Mr. Morel's claims against Xpress under the ADA and the Louisiana Employment Discrimination Law, as well as his claims against Wal-Mart under the Louisiana Employment Discrimination Law and the Rehabilitation Act.[97]

This Court has consistently held that loss of consortium claims are not cognizable in employment discrimination cases.[98]   "Title VII protects employees from employment discrimination and provides a cause of action to the employee only.   Title VII does not grant derivative claims to the family of the employee who has suffered the employment discrimination."[99]   This Court has also held that loss of consortium claims that derive from a spouse or family member's discrimination claims brought under the ADA, the Rehabilitation Act, and the Louisiana Employment Discrimination Law, as in this case, also fail because the spouse or family member can point to no violation of their personal rights.[100]   In doing so, this Court previously explained that, "It is well established that a plaintiff who claims a deprivation of

---

[96] *Id*. at ¶. 142.

[97] R. Doc. 1 at pp. 12-19.

[98] *Alderman v. Great Atl. & Pac. Tea Co.*, 332 F. Supp. 2d 932, 937 (E.D. La. 2004) (citing *Pellerin-Mayfield v. Goodwill Industries, Inc.*, Civ. A. No. 02-3774, 2003 WL 22174279 (E.D. La. Feb. 12, 2003)); *See*, *O'Bear*, Civ. A. No. 12-0019, 2012 WL 1802432 at *4 (quoting *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011)).

[99] *Pellerin-Mayfield*, Civ. A. No. 02-3774, 2003 WL 22174279 at *4 (citing *Jackson v. Entergy Operations*, Civ. A. No. 96-4111, at *7 n.49, 1998 WL 101690 (E.D. La. Mar. 4, 1998); *Reed v. Chemlink*, Civ. A. No. 90-3942, at *6, 1991 WL 161475 (E.D. La. Aug. 8, 1991)).

[100] *Purcell v. Tulane Univ. of Louisiana*, Civ. A. No. 16-1834, 2016 WL 6649220, at *8 (E.D. La. Nov. 10, 2016) (citing authority); *Narcisse v. Turner Industries Group, LLC*, Civ. A. No. 11-2659, 2012 WL 1565292, at *7 (E.D. La. Apr. 30, 2012).

rights must prove some violation of his or her personal rights."[101]   Here, Plaintiffs have failed to point the Court to any violation of Mrs. Morel's personal rights by Xpress.   Accordingly, Mrs. Morel's loss of consortium claim against Xpress is dismissed with prejudice.[102]

### E. A stay is appropriate in this case.

Lastly, Xpress asks this Court to dismiss all of Mr. Morel's claims against it if the Court finds that such claims must be referred to arbitration.[103]   Citing Fifth Circuit authority, primarily *Alford v. Dean Witter Reynolds, Inc.,* Xpress argues that Mr. Morel's claims should be dismissed, rather than stayed, because all of the claims are subject to arbitration.[104]   Plaintiffs do not address these arguments in their Opposition brief.[105]

Although not mentioned by Xpress, another Section of this Court recently recognized that the Fifth Circuit has not provided clear guidance regarding whether claims should be dismissed or stayed pending arbitration.[106]   In *Hanberry v. First Premier Bank*, this Court acknowledged that the Fifth Circuit in *Alford* indicated that dismissal is appropriate when all of the issues are referred to arbitration.[107]   This

---

[101] *Purcell*, . A. No. 16-1834, 2016 WL 6649220 at *8 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986)).

[102] To the extent that Mrs. Morel has alleged a loss of consortium claim against Wal-Mart, that claim is not the subject of the instant Motion and, therefore, remains pending.

[103] R. Doc. 15-3 at pp. 13-14.

[104] *Id*. at p. 13 (citing *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).

[105] *See, generally,* R. Doc. 23.

[106] *Hanberry v. First Premier Bank*, Civ. A. No. 2:19-CV-00898, 2019 WL 4415267, at *7 (E.D. La. Sept. 16, 2019) (Brown, C.J.).

[107] Civ. A. No. 2:19-CV-00898, 2019 WL 4415267 at *7 (quoting *Alford*, 975 F.2d 1161, 1164 (5th Cir. 1992)) (internal quotation marks omitted).

Court then pointed out that the Fifth Circuit subsequently clarified in *Apache Bohai Corp. LDC v. Texaco China, B.V.* that *Alford* does not require dismissal when all of the claims are subject to arbitration, and that district courts also have discretion to stay the case.[108]  This Court in *Hanberry* ultimately stayed the proceedings pending arbitration based upon the mandatory language in Section 3 of the FAA and the lack of clear guidance from the Fifth Circuit.[109]  One of our sister courts, relying on the *Hanberry* decision, has concluded that a third option, administrative closure, is appropriate when all of the claims are subject to arbitration.[110]  Our sister court reasoned that administrative closure is appropriate because it removes the case from the court's active docket, but provides the parties an opportunity to move to re-open the case if necessary.[111]  As explained by the Fifth Circuit:

> The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket . . . . This case still exists on the docket of the district court and may be reopened upon request of the parties or on the court's own motion.  That situation is the functional equivalent of a stay, not a dismissal, and is thus not an appealable order under the FAA.[112]

The Court agrees with our sister court that an administrative closure, rather than dismissal or a stay, is appropriate in this case.  The Court has determined that

---

[108] Civ. A. No. 2:19-CV-00898, 2019 WL 4415267 at *7 (quoting *Apache Bohai Corp., LDC*, 330 F.3d 307, 311 n.9 (5th Cir. 2003)).

[109] Civ. A. No. 2:19-CV-00898, 2019 WL 4415267 at *7 (*citing* 9 U.S.C. § 3).

[110] *Boxley v. Family Dollar Stores*, Civ. A. No. 5:19-cv-00568, 2020 WL 2104945, at *5-6 (W.D. La. May 1, 2020); *Sewell v. Wair Holdings, Inc.*, Civ. A. No. 2:19-CV-00698, 2020 WL 208929, at *6-7 (W.D. La. Jan. 13, 2020); *Banks v. Waitr Holdings, Inc.*, 2:19-CV-008998, 2019 WL 6883672 (W.D. La. Dec. 17, 2019).

[111] *Boxley*, Civ. A. No. 5:19-cv-00568, 2020 WL 2104945 at *6 (citing *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004)); *Sewell*, Civ. A. No. 2:19-CV-00698, 2020 WL 208929 at *7 (citing *Mire*, 389 F.3d at 167); *Banks*, 2:19-CV-008998, 2019 WL 6883672 (citing *Mire*, 389 F.3d at 167).

[112] *More*, 389 F.3d at 167.

all of Mr. Morel's employment discrimination claims against Xpress fall within the scope of the arbitration clause and, therefore, must be referred to arbitration. The Court has also determined that the only other claim asserted against Xpress, Mrs. Morel's loss of consortium claim, must be dismissed under Fed. R. Civ. P. 12(b)(6). Accordingly, the Court finds that administrative closure is appropriate, removing the case from the Court's active docket, but providing the parties an opportunity to reopen the case if necessary. To the extent that Xpress seeks a dismissal of this case pending arbitration, the Motion is denied.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Compel Arbitration and Dismiss All Claims[113] is **GRANTED in part** and **DENIED in part.** The Motion is **GRANTED** to the extent that Xpress moves to compel arbitration of Mr. Morel's employment discrimination claims asserted against Xpress and seeks dismissal of Mrs. Morel's loss of consortium claim asserted against Xpress. The Motion is **DENIED** to the extent that Xpress seeks a dismissal with prejudice of Mr. Morel's discrimination claims.

**IT IS FURTHER ORDERED** that this civil matter is **STAYED** in its entirety pending arbitration of Mr. Morel's employment discrimination claims against Xpress.

**IT IS FURTHER ORDERED** that all motions pending before the undersigned and the assigned United States Magistrate Judge are **DISMISSED**

---

[113] R. Doc. 15.

**WITHOUT PREJUDICE**, reserving to the parties the right to re-urge any motion when the matter is re-opened.

**IT IS FURTHER ORDERED** that the Clerk of Court **CLOSE** the above-captioned civil case for administrative and statistical purposes, pending further order from the Court. The Court shall retain jurisdiction and the case shall be restored to the trial docket upon motion of a party if circumstances change, so that Plaintiffs' claims may be heard to final disposition.

New Orleans, Louisiana, December 11, 2020.


**WENDY B. VITTER**
**United States District Judge**